UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Josiah McTier, *pro se*,                        :
                                                :
                        Petitioner,             :
                                                :     **OPINION AND ORDER**
            -against-                           :
                                                :     07-CV-870 (DLI)
People of the State of New York,                :
                                                :
                        Respondent.             :
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

On April 16, 2002, a jury convicted Josiah McTier ("petitioner") in New York State Supreme Court, Kings County, of first degree gang assault and the court sentenced petitioner to a prison term of seventeen years. The Appellate Division, Second Department, affirmed petitioner's conviction in a decision dated January 10, 2006, *People v. McTier*, 25 A.D.3d 572 (2d Dep't 2006), and the New York State Court of Appeals ("Court of Appeals") denied petitioner leave to appeal on April 10, 2006, *People v. McTier*, 6 N.Y.3d 850 (2006). Petitioner did not seek a writ of certiorari from the Supreme Court of the United States. Petitioner timely filed this petition for a writ of habeas corpus on February 24, 2007. For the reasons set forth below, the petition is denied.

**I.    Facts and Procedural History**

On September 22, 2000, at approximately 3:00 P.M., the victim, Rick Tubens, and four of his friends—Destin Smith, Jason, Gary and Kwane[1]—stood together outside of a corner store at the intersection of Rockaway Parkway and Glenwood Road in Brooklyn, New York, listening to a box radio. (Tr. at 134.)[2] An unidentified man with gold caps on his teeth approached and

---

[1] The surnames of Jason, Gary and Kwane are unknown.
[2] "Tr." refers to the transcript of petitioner's trial held on April 9-16, 2002.

addressed the group. (*Id.*) An argument ensued between the man with gold-capped teeth and Kwane over what Smith assumed related to Kwane's past gang affiliation. (Tr. at 135.) The man with gold-capped teeth threatened to "poke" Kwane as well as each of Kwane's friends. The tip of an ice pick appeared to protrude from his coat. (Tr. at 135-37, 178, 204, 214.)

Shortly thereafter, a black Chevy Blazer approached from Rockaway Parkway and stopped in front of the corner store where the group stood. (Tr. at 138–39, 159.) Approximately ten to twelve black males, apparently Crips gang members, based on the blue color of their clothing and bandanas, exited the vehicle and surrounded Tubens and his friends. (Tr. at 141, 145, 185, 205, 216.) As the men exited the vehicle and approached the group, the driver of the Chevy Blazer put on gloves, placed his hand on the handle of a handgun, which was visible in his waistband, and threatened to shoot Kwane in the face. (Tr. at 143, 181-84, 191-92.) At this point, petitioner approached the group and began speaking with the driver and the man with gold-capped teeth for several minutes. Petitioner wore a gray hooded sweatshirt with lettering on it and a black stocking cap on his head that covered his cornrows or braids. (Tr. at 144, 153, 186, 205, 242.) It became more crowded on the corner as the two groups continued to argue and two buses stopped nearby, discharging passengers. (Tr. at 146, 196.) Some of the men who exited the buses also wore Crips gang colors and greeted each other with gang handshakes. (Tr. at 193-96.) Then, without warning, petitioner swung at Kwane and attempted to stab him in the neck with an unidentified object that was visible in his hand. (Tr. at 147, 149, 189, 196, 215.)

The individuals from the Chevy Blazer, some carrying box cutters and knives, rushed at Tubens and his friends. (Tr. at 149, 215.) Tubens, Smith, Jason, Gary and Kwane all ran from the corner as the group from the Chevy Blazer, including the man with gold-capped teeth and petitioner, followed in armed pursuit. In an attempt to get away, Tubens swung the box radio at

the group as it advanced towards him, Kwane and Gary. (Tr. at 150, 192.) Alone, Tubens then backed away from the corner of Rockaway Parkway and moved in the direction of East 98th Street, while a group that included petitioner and the man with gold-capped teeth continued in pursuit. (Tr. at 150, 153-54, 202.)

Meanwhile, Sean Saey, a telephone mechanic employed by the Verizon Telephone Company, drove a company van on Rockaway Parkway and attempted to make a left turn onto Glenwood Road when he noticed a commotion on the corner. (Tr. at 238, 240-41, 269-70, 273.) Saey witnessed a group of approximately twenty to twenty-five people standing in the vicinity of the corner store. (Tr. at 240-41, 270-72, 277.) Saey could not make the left turn onto Glenwood Road, because there were people in the crosswalk. (Tr. at 241, 271.)

While Saey waited in the intersection, he watched as two males from the group on the corner moved onto Glenwood Road and stood in the middle of the street. (Tr. at 241-43, 273, 304, 306.) Saey described one of the men (presumably Gary) as slim, tall, and dark skinned. (Tr. at 242.) The other man, who Saey later identified as petitioner, was shorter with light skin and wearing a grey sweatshirt. (Tr. at 242-43, 245, 273.) With an unobstructed view, Saey observed petitioner pursuing the taller man as petitioner swung his fists in an attempt to hit him. The taller man back-pedaled while blocking petitioner's attack and swung back. (Tr. at 241-44, 273-75, 281-85, 308, 310.) Saey called 911 and soon heard police sirens. (Tr. at 253-254, 280-282, 285-288, 307-310.) Shortly after the sirens were heard, petitioner stopped swinging at the taller man and walked to the right of Saey's van, towards the intersection of Rockaway Parkway and Glenwood Road. The taller man retreated towards the sidewalk. (Tr. at 244-246, 275-276, 279, 281, 283.)

3

As the taller man walked along the sidewalk toward the dumpsters on the side of Glenwood Road, he was grabbed by Rick Tubens, who motioned as if to say, "Let's get out of here." (Tr. at 247-248, 268, 276, 279-280.) Tubens wore work clothes, which included a bandana with paint stains and a dust cover mask. (Tr. at 248.) He continued to hold the box radio. (*Id.*) The taller man and Tubens walked along Glenwood Road towards East 98th Street. (*Id.*)

A few moments later, as Saey inched through the intersection, he observed petitioner standing in the middle of Glenwood Road between East 98th Street and Rockaway Parkway, approximately twelve to fifteen feet in front of his van. (Tr. at 248-52, 258, 290-93, 295, 303, 310.) Although Saey did not know which direction petitioner came from, petitioner stood beside the dumpsters where he saw Tubens just moments earlier. (*Id.*)

Then, Saey saw an object in the middle of the street. (Tr. at 258.) As he approached the object, Saey observed someone screaming while standing over a body that lay in the street. (*Id.*) Saey exited his van, walked towards the body, and realized the body was that of Tubens. (Tr. at 259.) Tubens gasped for air as he lay on his back. (*Id.*) He had a bloodstain on his chest and appeared to be unconscious. (Tr. at 152, 259.) No witness observed the attack. (Tr. at 202.)

An ambulance transported Tubens to Brookdale Hospital, where Dr. Joseph Portereiko treated his injury. (Tr. at 323, 328-329.) Tubens arrived in a state of cardiac arrest with a single stab wound to the heart. (Tr. at 328-331.) Despite Dr. Portereiko's best efforts, Tubens died on April 11, 2001, due to complications from the wounds to his aorta. (Tr. at 323, 328-329.)

On the day of the attack, police officers brought petitioner to the 69th Police Precinct after matching him to the description of a person involved in the incident. (Tr. at 69-71, 83-85.) Saey identified petitioner in a lineup as the person he witnessed fighting with the taller man at

4

the intersection of Glenwood Road and Rockaway Parkway. (Tr. at 94, 244-46, 263-64.) The police then placed petitioner under arrest. (Tr. at 106.)

A Kings County Grand Jury voted an indictment against petitioner, charging him with two counts of Murder in the Second Degree (Penal Law § 125.25 [1] and [2]); two counts of Assault in the First Degree (Penal Law § 120.10 [1] and [3]); and one count of Manslaughter in the First Degree (Penal Law § 125.20 [1]); Manslaughter in the Second Degree (Penal Law § 125.15 [1]; Assault in the Second Degree (Penal Law § 120.05 [2]); Gang Assault in the First Degree (Penal Law § 120.07); Gang Assault in the Second Degree (Penal Law § 120.06); and Criminal Possession of a Weapon in the Fourth Degree (Penal Law § 265.01 [2]).[3]

On May 14, 2002, a jury convicted petitioner of first degree gang assault. The court sentenced petitioner to a prison term of seventeen years. (Sentencing Tr. at 15, Starkey, J.) On appeal, petitioner claimed that: i) his defense counsel was ineffective for failing: (a) to request a missing witness charge in a timely manner, (b) for failing to move for a continuance, and (c) for being unprepared during the trial; ii) the prosecutor submitted perjured evidence; iii) the evidence of the missing witness should have been disclosed to the jury; iv) the jury rendered a repugnant verdict; and v) there was insufficient evidence to support petitioner's conviction. The Appellate Division, Second Department, affirmed petitioner's conviction by decision dated January 10, 2006. *People v. McTier*, 25 A.D.3d 572 (2d Dep't 2006).

On January 20, 2006, petitioner sought leave to appeal the decision of the Second Department with the Court of Appeals. (Resp't Ex. C.) Petitioner claimed that the evidence presented at trial was legally insufficient to sustain his conviction, and thus violated his Due

---

[3] Petitioner was originally indicted under Kings County Indictment Number 10109/00. He was subsequently indicted under Kings County Indictment Number 3236/01 after the death of Rick Tubens. Both indictments were consolidated under Kings County Indictment Number 3236/01 on July 23, 2001, which contained the charges set forth above.

Process rights. In particular, petitioner claimed that respondent failed to establish that he was the person who stabbed Tubens and failed to show the essential element of necessary intent to cause serious physical injury. The Court of Appeals denied leave to appeal on April 10, 2006. *People v. McTier*, 6 N.Y.3d 850 (2006). Petitioner did not seek a writ of certiorari from the Supreme Court of the United States. Petitioner timely filed this petition for a *pro se* writ of habeas corpus on February 24, 2007.

## II. Discussion

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), where claims in state court were "adjudicated on the merits," the federal district court may grant a petition for a writ of habeas corpus to a state prisoner only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (citations omitted). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Habeas relief is available under the "unreasonable determination" clause "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id*. at 413. A federal court may not grant relief "simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, the state court's application must have been "objectively unreasonable." *Id*. at 409. In reviewing the state court's decision, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the Appellate Division affirmed petitioner's judgment of conviction and decided petitioner's legal sufficiency claim on the merits, stating that the evidence "was legally sufficient to establish the defendant's guilt of gang assault in the first degree . . . , [because] [c]ontrary to defendant's contentions, the testimony provided by two separate prosecution witnesses supports this conclusion." *McTier*, 25 A.D.3d at 572. The court further stated that "upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence." *Id*.

When addressing petitioner's remaining contentions, however, the court merely stated that they "either are unpreserved for appellate review or without merit." *Id*. "[W]hen a state court uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review," *Fama v. Comm'r Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000), because "the state court has not adequately indicated that its judgment rests on a state procedural bar and its reliance on local law is not clear from the face of the court's opinion." *Jimenez v. Walker*, 458 F.3d 130, 139 (2d Cir. 2006) (citations omitted). Therefore, when reviewing petitioner's claim that there was insufficient evidence to convict him of first degree gang assault, this court will

7

review the state court's decision to determine whether it was contrary to or involves an unreasonable application of clearly established federal law, and in light of the Second Circuit's decisions in *Fama* and *Jimenez*, when reviewing petitioner's remaining claims, this court must apply the same standard. Further, as a *pro se* litigant, petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

B. Exhaustion and Timeliness

Section 2254(b)(1) requires that before seeking a writ of habeas corpus in federal court, a state prisoner must exhaust his state court remedies by giving the highest court of the state "a fair opportunity to pass on his federal claim." *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (citations omitted). In New York, the exhaustion requirement is satisfied when a defendant, after appealing his conviction to the appropriate department of the Supreme Court's Appellate Division, seeks further review by applying to the Court of Appeals for a certificate granting leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (citing N.Y. Crim. Proc. Law § 460.20). Here, petitioner appealed his conviction to the Appellate Division, Second Department, and sought leave to appeal to the Court of Appeals. Further, the issues petitioner raised before the Appellate Division are identical to those raised in this court. Thus, petitioner exhausted his claims in state court.

AEDPA further requires that a state prisoner seeking habeas relief in federal court must file his federal petition within one year of the state court decision becoming final. 28 U.S.C. § 2244(d)(1). The Second Circuit has instructed "that the AEDPA limitations period specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States

Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). A party has ninety days to petition the Supreme Court for a writ of certiorari after the entry of a state court order denying discretionary review. (Sup. Ct. R. 13.) Accordingly, AEDPA's one-year statute of limitations did not begin to run until July 10, 2006, ninety days after the New York Court of Appeals declined to review petitioner's claims on April 10, 2006. Petitioner sought habeas review on February 24, 2007. The petition is timely.

    C.    <u>Analysis</u>

Petitioner challenges his conviction on five separate grounds. The court addresses each, in turn.

        1.    Ineffective Assistance of Counsel

First, petitioner asserts that he was denied his Sixth Amendment right to effective assistance of trial counsel. Petitioner argues that his defense counsel was ineffective by failing to timely request a missing witness jury instruction, poorly preparing for trial and by failing to move for a continuance to locate the missing witness. (Pet. at 6.)

To prevail on an ineffective assistance of counsel claim, the petitioner must show that counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The *Strickland* standard is "highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

During the trial, petitioner was simultaneously represented by two lawyers. The record reflects the fact that petitioner's trial counsel were well prepared. Their cross-examination of witnesses illustrated that they had a command of the substance of the witnesses' grand jury testimony, as well as the facts of the case, including the crime scene, individuals involved, and sequence of events as they occurred. This knowledge of the facts permitted effective cross-examination of prosecution witnesses. Contrary to petitioner's claim, trial counsel also argued vigorously, albeit unsuccessfully, for a missing witness charge and raised the request on three separate occasions during the five-day trial. As discussed below, the trial court's denial of the requests for a missing witness charge was reasonable.

Further, trial counsels' failure to request a continuance to locate the missing witness did not amount to ineffective assistance. Trial counsels' investigator attempted to locate the witness on two separate occasions without success. During the second attempt, the occupants of the apartment where the witness was thought to be located "refused to give any information [regarding the witness] and said he was not there." (Tr. at 314.) The witness's telephone number had been disconnected. (Tr. at 313.) Petitioner is not entitled to a continuance as a matter of right. The grant or denial of a continuance is left to the sound discretion of the trial court. *Drake v. Portuondo*, 321 F.3d 338, 344 (2d Cir. 2003). That petitioner's trial counsel did not request a continuance under these circumstances does not warrant habeas relief in and of itself. "[A] court must consider any purported omissions in light of counsel's overall performance." *Torres v. Costello*, 97 CV 5480, 2001 WL 811924, at *12 (E.D.N.Y. Jun. 1, 2001) (Raggi, J.) (citing *Kimmelman*, 477 U.S. at 386 (1986)).

As a result of counsel's diligent efforts, the jury acquitted petitioner of numerous more serious charges, including two counts of second degree murder, one count of first degree

manslaughter and two counts of first degree assault. (Tr. at 524.) When granted the opportunity to speak immediately prior to sentencing, petitioner stated, "[f]irst of all, let it be known to the Court that I was, had [*sic*] two superb lawyers in helping me in this ordeal . . . ." (Sentencing Tr. at 15.) The court agrees. Therefore, habeas corpus relief on this ground is unwarranted.

2.          Absence of a Missing Witness Charge

Petitioner also requests relief on the ground that the trial court improperly denied a missing witness charge based on the prosecution's failure to call Jason Robinson. (Pet. at 7.) Petitioner contends that Mr. Robinson "would without a doubt give testimony favorable to the defense," (*id*.), because he "was present at the scene and could have confirmed or denied appellant's participation or lack of it" in the events at issue. (Pet. Mem. Supp. at 7.)

During petitioner's trial, defense counsel requested a missing witness charge, arguing that the prosecution failed to disclose the existence of Mr. Robinson. (Tr. at 358.) In response, the prosecution stated that it provided petitioner with police reports containing statements by Mr. Robinson three months earlier, as well as Mr. Robinson's address, and that Mr. Robinson could not testify favorably for the prosecution because he failed to identify anyone when asked to view a photo array containing petitioner's photograph. (Tr. at 220-21.) The trial court did not make a ruling on the petitioner's request at that time, but stated that "reports referring to the existence of [the] witness [were] turned over" by the prosecution, and directed the prosecution to provide petitioner with Mr. Robinson's phone number. (Tr. at 224.) After the prosecution provided Mr. Robinson's phone number, defense counsel again discussed their missing witness application with the court. (Tr. at 312.) Finally, during the charge conference, defense counsel renewed its request concerning the missing witness charge. (Tr. at 358.) The trial court denied the request,

holding that no showing had been made that Mr. Robinson was in the prosecution's control. (*Id.*)

"A state trial court's jury instruction, such as a missing witness charge, is ordinarily a matter of state law." *Wright v. Marshall*, 05 CV 2280, 2005 WL 1861633, at *4 (E.D.N.Y. Apr. 4, 2005). "[D]ecisions in this area will rarely support reversal or habeas relief since reviewing courts recognize the aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense than any reviewing court." *Malik v. Kelly*, 97 CV 4543, 1999 WL 390604, at *7 (E.D.N.Y. Apr. 6, 1999) (quoting *United States v. Torres,* 845 F.2d 1165, 1171 (2d Cir. 1988) (internal quotation marks and citation omitted)). Thus, the decision of whether to provide jurors with a missing witness charge is committed to the sound discretion of the trial court. *Torres*, 845 F.2d at 1170-71. Finally, petitioner must establish that the failure to provide the charge rendered the trial fundamentally unfair, in violation of petitioner's due process rights. *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

"[F]inding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001). Under New York law, the initial burden for requesting a missing witness charge rests with the party requesting the charge. *People v. Gonzalez*, 68 N.Y.2d 424, 427 (1986). The party seeking this charge must establish that "there is an uncalled witness believed to be knowledgeable about a material issue pending in the case, that such witness can be expected to testify favorably to the opposing party and that such party has failed to call him to testify." *Id*. Once the party seeking the charge has met this initial burden, the opposing party bears the burden of:

> demonstrating that the witness is not knowledgeable about the issue, that the issue is not material or relevant, that although the issue is material or relevant, the testimony would be cumulative to other evidence, that the witness is not "available," or that the witness is not under the party's "control" such that he would not be expected to testify in his or her favor.

*Id.* at 428.

Having reviewed the trial record, the court is satisfied that the trial court's denial of petitioner's request for a missing witness charge was reasonable. Petitioner failed to meet the initial burden of establishing that Mr. Robinson would be expected to testify favorably for respondent and adversely to petitioner. When asked by the trial court about Mr. Robinson's role in the investigation, the prosecution stated that Mr. Robinson viewed a photo array and failed to identify petitioner. (Tr. at 221.) The prosecution also noted, "[i]t wasn't like it was a miss hit. It was a no hit . . . [t]his witness is not a witness that's in the People's control." (*Id.*) Thus, to the contrary, Mr. Robinson could have been expected to testify favorably for petitioner, as he was present during the events in question and was unable to identify petitioner as a person involved in the assault of Tubens. Moreover, as the trial court noted, petitioner failed to establish that Mr. Robinson was in the prosecution's control by virtue of his relationship with Tubens. *See People v. Brunson*, 270 A.D.2d 133, 134 (1st Dep't 2000) (holding that a witness's "casual friendship with the complainant did not place them within the People's 'control' for purposes of a missing witness charge"). As the trial court's denial of petitioner's request for a missing witness charge was neither contrary to nor an unreasonable application of federal law, habeas corpus relief on this ground is unwarranted.

### 3. Repugnant Verdict

Next, petitioner challenges the jury's verdict. Petitioner contends that the jury, in returning a guilty verdict for one count of first degree gang assault, while returning a not guilty

13

verdict for two counts of second degree murder, one count of first degree manslaughter, and two counts of first degree assault, rendered a repugnant verdict. (Pet. at 9.)

Though this claim is not procedurally barred, it is well settled that "[a] claim of inconsistent or repugnant verdicts generally presents no issue upon which federal habeas corpus relief could be granted." *House v. Miller*, 02 CV 5379, 2003 WL 23198788, *16 (E.D.N.Y. Oct. 27, 2003); *see also United States v. Acosta,* 17 F.3d 538, 545 (2d Cir. 1994) ("[I]t has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty.") (collecting cases). According to the Supreme Court, "inconsistent verdicts are constitutionally tolerable." *Dowling v. United States*, 493 U.S. 342, 353-54 (1990).

The Court explained in *United States v. Powell*, 469 U.S. 57, 64-65 (1984), that "where truly inconsistent verdicts have been reached, 'the most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932)). The Court also stated that "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion . . . then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense. *Id*. at 64-65. Finally, the *Powell* Court noted that "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts" and that further safeguards against jury irrationality are unnecessary. *Id*. at 67. As set forth more fully below, petitioner's claims are rejected as either beyond review by this court on a petition for a writ of habeas corpus or without merit. Accordingly, habeas corpus relief on this ground is denied.

4. Insufficient Evidence

Petitioner further argues there was insufficient evidence to convict him of first degree gang assault.[4] Petitioner takes issue with the credibility of two prosecution witnesses, namely, Destin Smith and Sean Seay. (Pet'r Mem. Supp. at 11-19.) Petitioner asserts that due to inconsistencies in the testimony of these witnesses, the prosecution failed to meet their burden of proving each element of first degree gang assault beyond a reasonable doubt. (*Id*. at 11.)

The Due Process Clause of the Fourteenth Amendment prohibits criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing a state court conviction on these grounds, a federal habeas court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A habeas petitioner challenging the legal sufficiency of the evidence in a state criminal conviction "bears a very heavy burden." *Spears v. Spitzer*, 02-CV-2301, 2005 WL 588238 at *11 (E.D.N.Y. Mar. 14, 2005) (quoting *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997)).

Though this claim is not procedurally barred, when a challenge to the sufficiency of the evidence, as here, is based upon a witness's alleged lack of credibility, the petitioner's burden becomes insurmountable because section 2254 "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). The weight given to a witness's testimony is a question of fact to be determined by the jury, *Mason v. Brathwaite*, 432 U.S. 98, 116 (1977), and a district court sitting in habeas review must resolve all credibility

---
[4] To the extent that petitioner's argument may be construed as a claim that the jury's verdict was against the weight of the evidence, it is "not cognizable in a habeas corpus proceeding." *Morrison v. Ercole*, Slip Copy, 2008 WL 4722095, at *1 (E.D.N.Y. Oct. 21, 2008) (citing *Maldanado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)).

issues in the verdict's favor and cannot second-guess the jury's determinations. *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir.1993); *see Ayala v. Ercole*, 06-CV-1747, 2007 WL 1135560 at *8 (E.D.N.Y. Apr. 17, 2007) (collecting cases). Accordingly, petitioner's request for habeas corpus relief on this ground is unwarranted.

To the extent that petitioner challenges the sufficiency of the evidence generally, the court finds this request for habeas corpus relief equally unavailing. Under New York State law, "[a] person commits first degree gang assault when, with the intent to cause serious physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person." N.Y. Penal Law § 120.07 (McKinney 2004).

A thorough review of the record reveals that petitioner arrived at the location in question on foot and spoke with a group of approximately ten to twelve individuals who arrived in a black sport utility vehicle and appeared to be Crips gang members. (Tr. at 141, 185.) These and other individuals within petitioner's group had an ice pick, a gun, box cutters, and knives. (Tr. at 137, 149, 215.) Within minutes, a physical altercation occurred between petitioner's group and a separate group of five individuals associated with, and including Tubens. (Tr. at 150, 192.) Petitioner swung at a friend of Tubens in an attempt to stab him in the neck with an object that he held in his hand. (Tr. at 147, 149, 189, 196, 215.) Petitioner failed to make contact with this person, who along with Tubens, backed up defensively. (Tr. at 150, 192.) As the altercation continued, Tubens swung his box radio to keep petitioner and other aggressors at bay. (Tr. at 150, 192.) Petitioner and several others began chasing Tubens and another individual on Glenwood Road toward East 98th Street. (*Id*.) Tubens continued to retreat on Glenwood Road toward East 98th Street. (Tr. at 150, 153-54, 202.) As petitioner's group proceeded on

Glenwood Road, they briefly left the sight of the testifying witnesses. (Tr. at 249.) Moments later, petitioner was seen standing in the middle of the street on Glenwood Road between Rockaway Parkway and East 98th Street. (Tr. at 248-52, 258, 290-93, 303, 310.) At that time, Tubens lay in the middle of the street at intersection of Glenwood Road and East 98th Street. (Tr. at 259.) Unconscious, Tubens suffered a stab wound in his chest. (Tr. at 152, 259.) This stab wound caused Tubens' death almost seven months later. (Tr. at 237.)

Through testimony, Tubens' friend, Destin Smith, provided some of these facts. Sean Saey, a bystander, provided additional and corroborating testimony concerning the events. When viewing this evidence in the light most favorable to the prosecution in this case, the court finds that a rational trier of fact could have found the essential elements of first degree gang assault beyond a reasonable doubt. Therefore, petitioner's request for habeas corpus relief on this ground is denied.

5. Prosecutorial Misconduct

Finally, though it is not entirely clear from the language contained in petitioner's request for relief, the court interprets the allegation as an assertion that the prosecutor committed misconduct by knowingly introducing perjured or false testimony into evidence. Petitioner states that the "[p]rosecution misled the jury and the court as to deceased [*sic*] never regaining consciousness" because "[t]here are police reports of the deceases [*sic*] mother stating the contrary." (Pet. at 12.)

Upon review of the trial record and petitioner's direct appeals, the court finds that the state court's decision of denying petitioner's prosecutorial misconduct claim is not contrary to, nor does it involve an unreasonable application of federal law. A witness commits perjury by offering "false testimony concerning a material matter with the willful intent to provide false

testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *Id*. Furthermore, "[p]erjury is not demonstrated by showing that the testimony of a witness is inconsistent with the statements of another witness." *United States v. Nazario*, 04 CR 796, 2006 WL 3375391 *4 (S.D.N.Y. Nov. 17, 2006) (citing *United States v. Gambino*, 59 F.3d at 353, 365 (2d Cir. 1995)).

Here, the alleged prosecutorial misconduct arises from the testimony of Dr. Joseph V. Portereiko, who attended to Tubens on a regular basis from the time he arrived at the Brookdale Hospital emergency room on September 22, 2000 until the time of his discharge and transfer to Kingsbrook Hospital in December 2000, and who the court qualified as an expert in the field of general surgery. (Tr. at 326.) Dr. Portereiko testified that when Tubens arrived at the hospital "his heart had stopped," that "[h]e had no signs of life . . . no blood pressure . . . no pulse . . . and he wasn't breathing." (Tr. at 328-29.) Dr. Portereiko also testified that "greater than ten minutes" elapsed without adequate blood flow to Tubens' organs or brain and that after performing life-saving surgery and for the duration of Tubens' life, he "never gained [the] mental status" of being alert, "never moved his extremities, . . . and never did anything that one would consider he was definitely there and with us more than open his eyes." (Tr. at 334, 339.) In contrast, petitioner notes Tubens' mother's statement to the police that "her son had regained consciousness" while in the hospital. (Pet. Ex. 2b.) This inconsistency alone does not amount to perjury. Thus, habeas corpus relief on this ground is also unwarranted.

## III. Conclusion

For the reasons set forth above, the petition for a writ of habeas corpus is denied in its entirety. A certificate of appealability shall not issue as petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253 (c)(2); Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED: Brooklyn, New York
March 23, 2008

_____/s/_____

DORA L. IRIZARRY
United States District Judge